T.C. Memo. 2007-323

UNITED STATES TAX COURT

JUDY HEDRICK BLOSSER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9350-06L.                    Filed October 29, 2007.

Brian Carl Bernhardt, for petitioner.

Veena Luthra, for respondent.


MEMORANDUM OPINION

GOEKE, Judge:  This matter is before the Court on the
parties' cross-motions for summary judgment pursuant to Rule
121.[1]  The issue in this collection case is whether respondent's

---

[1] Unless otherwise indicated, all Rule references are to the
Tax Court Rules of Practice and Procedure, and all section
references are to the Internal Revenue Code of 1986, as amended.

Appeals Office abused its discretion in sustaining respondent's proposed levy action against petitioner to collect income tax liabilities for the taxable years 1994, 1995, and 1996 and denying petitioner's request for alternative collection methods. We conclude that there are no genuine issues as to any material facts, a decision may be rendered as a matter of law, and the Appeals Office abused its discretion.

## Background

At the time she filed her petition, petitioner resided in Harrisonburg, Virginia.

Petitioner did not file Federal income tax returns for taxable year 1994, 1995, or 1996. Respondent issued notices of deficiency for those years and determined tax deficiencies of $2,892, $6,368, and $2,937, respectively.

On November 22, 2005, respondent mailed to petitioner a Letter L-1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, informing petitioner that respondent proposed to levy on her property to collect Federal income taxes owed for 1994, 1995, and 1996. After assessing penalties and interest and applying withholding credits, respondent determined that petitioner owed a total of $26,011.04.

On December 9, 2005, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, regarding the proposed levy. Petitioner claimed that she could not afford to

pay the income tax owed, and as evidence of her financial situation she attached a Form 433-F, Collection Information Statement, dated September 22, 2005.  The Form 433-F detailed petitioner's income, expenses, and assets at that time. Petitioner also stated that she anticipated having to find a new job in January of 2006.

By letter dated February 28, 2006, an Appeals Office settlement officer notified petitioner that she had scheduled a telephone hearing for April 6, 2006.  The letter requested petitioner to submit within 14 days a completed Form 433-A, Collection Information Statement For Wage Earners and Self-Employed Individuals, a completed offer in compromise package, and signed Federal income tax returns for taxable years 1999 through 2003 so that the Appeals Office could consider collection alternatives in a collection hearing.  Petitioner did not send any of the requested information.

According to the administrative record, during the telephone hearing petitioner told the settlement officer that she had lost her full-time job and had acquired a part-time job.  Petitioner stated that she was unable to make a payment at that time and thought that she would be granted currently not collectible (CNC) status because she had sent a Form 433-F to another Internal Revenue Service officer.  The settlement officer told petitioner that her account had been on CNC status but was removed from said

status in September of 2005. The settlement officer inquired why petitioner had not provided another collection information statement (CIS). Petitioner explained that she had not been able to because of a family tragedy. Petitioner also explained that she did not file tax returns for 1999 through 2003 because she was incarcerated during those years. The settlement officer told petitioner that she could not consider collection alternatives at that time because petitioner had failed to provide current financial information, file tax returns for the specified years, or provide verification as to why she did not file the requested returns. The settlement officer also told petitioner that she would be receiving a notice of determination and had the right to challenge the Appeals Office's determination in this Court. Petitioner told the settlement officer that she intended to prepare current financial information in order to request reinstatement of CNC status.

On April 20, 2006, respondent mailed petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), sustaining the proposed levy action. The Appeals Office determined that petitioner (1) did not provide current financial information, (2) failed to file the requested tax returns, and (3) failed to provide any reason why she did not file the requested returns.

Petitioner timely petitioned this Court for review of respondent's determination pursuant to section 6330(d). Petitioner submitted with her posttrial brief records indicating that she had been incarcerated from 1999 to 2003.

## Discussion

Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Beery v. Commissioner, 122 T.C. 184, 187 (2004). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be viewed in the manner most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). In this case, there is no apparent disagreement as to the material facts and circumstances. Accordingly, this case is ripe for resolution by means of summary judgment.

Section 6330(a)(1) gives a taxpayer the right to a hearing with the Appeals Office before the Secretary can levy on the taxpayer's property. Under section 6330(d)(1), where a taxpayer's underlying tax liability is not at issue, we generally review the Appeals Office's determination following the hearing for an abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs if the Appeals Office exercises its discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112

T.C. 19, 23 (1999). Because petitioner does not dispute her underlying tax liability, we apply the abuse of discretion standard.

Under section 6330(c)(3), in making a determination the Appeals Office must (1) verify that the requirements of applicable law and administrative procedures have been met, (2) consider the issues the taxpayer raised at the hearing, including collection alternatives, and (3) determine whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary. Petitioner argues only that the Appeals Office abused its discretion by failing to consider the collection alternative she proposed during the telephone hearing.

The Internal Revenue Manual states that settlement officers may not consider collection alternatives unless the taxpayer has provided adequate financial information, such as the filing of a current CIS, and has filed all required tax returns. See 2 Administration, Internal Revenue Manual (CCH), sec. 5.16.1.2.9(1), at 17,810; sec. 5.15.1.1, at 17,653. Petitioner does not object to this policy, and we have found it to be reasonable. See Estate of Atkinson v. Commissioner, T.C. Memo. 2007-89. It is also the policy of the Appeals Office to request a new CIS if the taxpayer's financial condition changes after the

submission of an earlier statement, and we have upheld determinations based on this policy. Etkin v. Commissioner, T.C. Memo. 2005-245; 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.1(8), at 17,654.

Respondent argues that when a settlement officer follows the prescribed guidelines in determining whether a collection alternative is acceptable, the settlement officer's conclusion will be considered reasonable and not an abuse of discretion. In support of this argument, respondent cites Moorhous v. Commissioner, T.C. Memo. 2003-183, Rodriquez v. Commissioner, T.C. Memo. 2003-153, and Schenkel v. Commissioner, T.C. Memo. 2003-37.

Petitioner correctly points out that these cases address whether the Appeals Office abused its discretion by refusing offers-in-compromise (OICs). Petitioner did not make an OIC but requested a collection alternative-- that her account be placed on CNC status. However, we disagree that these cases are distinguishable, although sections 7122(e) and 6159(e) specifically require the Secretary to establish procedures for administrative review of rejections of OICs and terminations of installment agreements, while there is no statutory mandate for establishing procedures for placing a taxpayer's account on CNC status. We see no reason, however, to hold the Appeals Office to a higher standard when considering collection alternatives from a

taxpayer who is seeking complete relief from her undisputed tax liability than when considering a taxpayer who is offering to pay part of her tax liability, particularly when the procedural prerequisites are essentially the same in both situations, and we agree with respondent to that extent. However, this policy does not excuse the Appeals Office for disregarding a taxpayer's attempts to provide current financial information.

Petitioner argues that even if following its established policies would have shielded the Appeals Office, it still abused its discretion in denying her CNC status because she provided the requested information. In particular, petitioner argues that the Appeals Office erred (1) by claiming that she had not provided current financial information despite the facts that she had provided the Appeals Office with a CIS before the hearing and further explained the changes in her financial situation during the hearing, and (2) by refusing to consider her statement that she was incarcerated from 1999 to 2003 as verification of her assertion that she earned no income, and therefore had no filing obligation, for those years, or by failing to ask for additional verification.

Respondent argues that our review is limited to the administrative record, and there is nothing in the administrative record indicating that the Appeals Office abused its discretion. Indeed, there is little that petitioner offers for us to consider

apart from the information contained in the administrative file. Nevertheless, this case is a good example of the problems created by the lack of a transcript or actual record of the discussions between the taxpayer and the settlement officer. The only record of the April 6, 2006, telephone conversation between petitioner and the settlement officer is the entry made by the settlement officer in her log for this case. This telephone conversation was the only "hearing" that petitioner received, and the settlement officer's entry is very abbreviated. We are forced to make certain inferences from the information that is known.

According to the settlement officer's entry, petitioner submitted a CIS when she requested a collection hearing, and the settlement officer knew this. Petitioner told the settlement officer that she lost her full-time job and gained a part-time job after she had submitted the CIS. Petitioner explained that she was unable to provide a new CIS because her family had recently experienced a tragedy. She also explained that she did not file Federal tax returns for 1999 to 2003 because she was incarcerated during those years. After hearing this information, the settlement officer told petitioner that respondent would be sending her a notice of determination. There is no indication in the administrative record that the settlement officer discussed the particulars of the changes in petitioner's financial information from the time she completed the CIS in September

2005, despite the fact that petitioner claimed in her request for a collection hearing that she could not pay the underlying tax liability and that her financial status became worse after she completed the original CIS.  There is also no indication that the settlement officer considered petitioner's statement that she was incarcerated from 1999 to 2003 or made any determination whether this was sufficient verification that she had no filing obligations during those years.  Had the settlement officer asked for verification, petitioner would have been able to provide it just as she provided this Court with records confirming her incarceration.  Given the undisputed facts, we find that the abrupt decision by the settlement officer indicates she did not consider the issues petitioner raised during the hearing as required by section 6330(c)(3)(B) before deciding to issue the notice of determination, which was an abuse of her discretion. If section 6330(b) is to be given any force, the Appeals Office must make its determination <u>after</u> the taxpayer has had the opportunity to be heard at a fair hearing and after giving adequate consideration to all meritorious issues the taxpayer has raised during the hearing.

Accordingly, because we conclude that respondent abused his discretion by not considering the issues petitioner raised at the hearing, and no genuine issue of material fact exists requiring

trial, we shall grant petitioner's motion for summary judgment and deny respondent's motion for summary judgment.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.