T.C. Memo. 2012-109

UNITED STATES TAX COURT

S. JOSEPH BALSAMO AND EDNA MAE BALSAMO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1235-10L.                    Filed April 12, 2012.

S. Joseph Balsamo and Edna Mae Balsamo, pro sese.

<u>Shannon E. Loechel</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  This case is before the Court on respondent's motion for

summary judgment pursuant to Rule 121.[1]  We must decide whether respondent's

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended, and Rule references are to the Tax Court Rules of
Practice and Procedure.

Appeals Office abused its discretion when it upheld respondent's notice of Federal tax lien (NFTL) with respect to petitioners' 1996, 1997, 1998, 1999, 2001, 2004, 2005, and 2006 tax years.

<u>Background</u>

The facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments. Petitioners are husband and wife who resided in Georgia at the time they filed their petition.

Petitioners filed tax returns for their 1996, 1997, and 1998 tax years but failed to pay the full amount of their tax liability for each year. Additionally, petitioners also failed to report some income on their 1996 and 1998 returns, and respondent subsequently issued notices of deficiency to petitioners with respect to those years. Petitioners did not file petitions in the Tax Court disputing those notices of deficiency. On or about March 14, 2002, respondent sent petitioners a notice of intent to levy with respect to their 1996, 1997, and 1998 tax years. Petitioners had an equivalent hearing with respect to the proposed levy for their 1996, 1997, and 1998 tax years, and on December 6, 2002, respondent's Appeals Office issued a decision letter (2002 decision letter) determining not to uphold the proposed levy. The 2002 decision letter explained that the basis for the Appeals Office's determination was that petitioners had a small balance due, had filed their

return and paid their tax liability for 2000, had a modest income, and were elderly and in poor health. The 2002 decision letter concluded: "Based on the Balsamos [sic] ages and health conditions, the decision to place the account in currently not collectible status is the least intrusive of the collection alternatives. No levy action is currently proposed by Compliance and none should be initiated unless information shows a substantial positive change in their financial affairs."

For their 1999, 2001, 2004, 2005, and 2006 tax years, petitioners similarly filed their tax returns but failed to pay the amounts due. Additionally, they failed to report some of their income on their 2006 tax return, and respondent issued petitioners a notice of deficiency. Petitioners did not petition the Tax Court with respect to the 2006 notice of deficiency. On various dates during 2006, respondent sent petitioners notices of intent to levy with respect to their 1999, 2001, and 2004 tax years. Petitioners requested a collection hearing with respect to the notices of intent to levy. Respondent contends that the Appeals Office conducted an equivalent hearing and issued a decision letter on May 29, 2007 (2007 decision letter); however, respondent cannot find a copy of the 2007 decision letter. Nonetheless, petitioners refer to the 2007 decision letter in some of their correspondence with respondent and they do not dispute that they received the 2007 decision letter, so we will accept that it was sent to them and that the 2007 decision

letter contained a determination to uphold the proposed levies. Respondent has not levied to collect petitioners' 1999, 2001, or 2004 tax liability.

On or about November 12, 2008, respondent issued petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320 with respect to their 1996, 1997, 1998, 1999, 2001, 2004, 2005, and 2006 tax years. Petitioners timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. In an attachment to the Form 12153, petitioners proposed to settle their tax liability of approximately $23,000 by making six monthly payments of $200 each for a total of $1,200 (informal offer-in-compromise). At the time they filed their Form 12153, petitioners had not yet submitted their 2007 tax return, but they submitted that return in response to a request from respondent's Appeals Office. After receiving a copy of petitioners' 2007 tax return, respondent's Appeals Office granted petitioners a face-to-face hearing. Petitioners' case was subsequently assigned to C.M. Hardman (Ms. Hardman) for the face-to-face hearing. Before the hearing, Ms. Hardman contacted petitioners and requested that they complete a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and submit copies of their tax returns from 1996 through 2008. On May 28, 2009, Ms. Hardman met with S. Joseph Balsamo (petitioner) for the collection hearing. Mrs. Balsamo did not appear at the hearing.

At the hearing, Ms. Hardman pointed out to petitioner that petitioners had made some errors on their 2007 tax return and that they had not yet submitted their 2008 return. She also instructed petitioner to complete Form 433-A. Petitioner agreed to correct the errors on petitioners' 2007 return, to submit their 2008 return, and to submit Form 433-A. At the hearing, Ms. Hardman also explained to petitioner that he is required to report and pay self-employment tax with respect to his part-time work as a computer consultant.

Ms. Hardman met with petitioner for a followup hearing on June 25, 2009. Petitioner brought the 2002 decision letter to the hearing and contended that petitioners had been told by respondent that their account was in "currently not collectible" status and that they therefore no longer owed taxes for 1996, 1997, and 1998. Ms. Hardman explained to petitioner that "currently not collectible" is a temporary status and does not mean that petitioners no longer owe taxes.

Petitioner had not completed Form 433-A or submitted petitioners' 2008 tax return, and Ms. Hardman therefore advised him that she was not able to consider petitioners' informal offer-in-compromise at that time. However, she gave him additional time to submit the required documents. Additionally, Ms. Hardman advised petitioner that the informal offer-in-compromise was unlikely to be accepted because petitioners had at least $200,000 in equity in their home. Petitioners were

not able to complete the Form 433-A by the date agreed upon, but Ms. Hardman again granted them additional time.  On July 21, 2009, Ms. Hardman received a Form 433-A from petitioners, but they failed to include copies of their bank statements, despite the fact that the Form 433-A clearly states:  "Please include your current bank statements (checking, savings, money market, and brokerage accounts) for the past three months for all accounts."  Petitioners attached other required documents to the Form 433-A.  On the Form 433-A, petitioners stated that the current value of their home was $200,000 but that the home was subject to an existing mortgage of $23,900.  Petitioners also disclosed that they owned stock with a current value of $32,000.

On or about December 17, 2009, respondent's Appeals Office issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), sustaining the NFTL.  The notice of determination explained that because petitioners failed to file their 2008 tax return[2] and because they failed to make the required estimated tax payments with respect to petitioner's self-employment income for 2008 and 2009, they were not in compliance with paying and filing requirements and were therefore

_____

[2]As we explain below, petitioners dispute respondent's contention that they never filed their 2008 tax return, but we conclude that this dispute is irrelevant to the question of whether the Appeals Office abused its discretion.

ineligible to have their collection alternative considered. The notice of determination stated that the Appeals Office had verified that all legal and procedural requirements had been met and addressed all other issues raised by petitioners.

After receiving the notice of determination, petitioners timely filed their petition in this Court. Petitioners subsequently also filed an amended petition.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, the party opposing summary judgment must set forth specific facts that show a genuine issue of material fact exists and may not rely merely on allegations or denials in the pleadings. Rule 121(d).

Where the underlying tax liability is not in issue, we review the determination of the Appeals Office for abuse of discretion. See Sego v. Commissioner, 114 T.C.

604, 610 (2000). In reviewing for abuse of discretion, we will reject the determination of the Appeals Office only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Petitioners do not dispute the underlying liabilities. Consequently, we review the determination of the Appeals Office for abuse of discretion.

Where, as in the instant case, we review the Appeals Office's determination to sustain the filing of an NFTL for abuse of discretion, we review the reasoning underlying that determination to decide whether it was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of the Appeals Office, and we do not decide independently whether we believe the lien should be withdrawn. See id.

Pursuant to section 6321, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay. See Iannone v. Commissioner, 122 T.C. 287, 293 (2004). The lien arises automatically on the date of assessment and persists until the tax liability is satisfied or becomes unenforceable by reason of lapse of time. Sec. 6322; Iannone v. Commissioner, 122 T.C. at 293. The purpose of filing, pursuant to section 6323, notice of the lien that arises under section 6321 is to protect the Government's interest in a taxpayer's

property against the claims of other creditors. See sec. 6323(a). Filing an NFTL validates the Government's lien against a subsequent purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. See id.; Stein v. Commissioner, T.C. Memo. 2004-124; Lindsay v. Commissioner, T.C. Memo. 2001-285, aff'd, 56 Fed. Appx. 800 (9th Cir. 2003).

If the Commissioner chooses to file an NFTL, he must provide the taxpayer with written notice not more than five business days after the filing and he must advise the taxpayer of the right to a hearing before the Appeals Office. Sec. 6320(a). If the taxpayer requests such a hearing, the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The Appeals Office must also determine whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Secs. 6320(c), 6330(c)(3). Finally, the Appeals Office must consider any issues raised by the taxpayer at the hearing, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives such as an installment agreement. Secs. 6320(c), 6330(c)(2) and (3).

Respondent contends that the determination of the Appeals Office should be sustained because petitioners failed to provide the required information and were not

in compliance with their obligations to file estimated taxes with respect to petitioner's self-employment income.  We agree; either of those grounds would be sufficient, standing alone, to justify the Appeals Office's refusal to consider petitioners' offer-in-compromise.  We have consistently held that it is not an abuse of discretion for the Appeals Office to reject collection alternatives and sustain the proposed collection action on the basis of the taxpayer's failure to submit requested financial information.  See Huntress v. Commissioner, T.C. Memo. 2009-161; Prater v. Commissioner, T.C. Memo. 2007-241; Roman v. Commissioner, T.C. Memo. 2004-20.  In doing so, the Appeals Office is following the requirements of section 301.6320-1(e)(1), Proced. & Admin. Regs.  Petitioners contend that the Appeals Office did not instruct them to include copies of their bank statements with the Form 433-A.  However, the Form 433-A clearly states:  "Please include your current bank statements (checking, savings, money market, and brokerage accounts) for the past three months for all accounts."  Petitioners should have been aware that they were required to include copies of all their bank statements with the Form 433-A, and they were given several extensions of time to submit the completed Form 433-A, yet they failed to do so.  Accordingly, we conclude that it was not

an abuse of discretion for the Appeals Office to refuse petitioners' offer-in-compromise on the basis that petitioners failed to submit all of the required documents.

Similarly, we have held that it is not an abuse of discretion for the Appeals Office to refuse to consider a taxpayer's offer-in-compromise on the grounds that the taxpayer has a history of noncompliance and is not in compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007). In doing so, the Appeals Office is following the requirements of the regulations. See sec. 301.6320-1(d)(2), Q&A-D8, Proced. & Admin. Regs. ("the IRS does not consider offers to compromise from taxpayers who have not filed required returns or have not made certain required deposits of tax"). Although petitioners dispute respondent's contention that they did not file their 2008 tax return, they have not contested respondent's contention that they failed to make estimated tax payments with respect to petitioner's self-employment income. Accordingly, petitioners were not in compliance with their current tax obligations, and it was not an abuse of discretion for respondent to refuse their offer-in-compromise.

Consequently, we conclude that no genuine issues of material fact remain and hold that respondent is entitled to judgment as a matter of law that there was no abuse of discretion in the determination to reject petitioners' informal offer-in-

compromise and sustain the NFTL.  Accordingly, we will grant respondent's motion for summary judgment.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.